UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE: WB COYLE A/K/A WILLIAM BERNARD COYLE A/K/A W.B. COYLE**,<br><br>Debtor.<br><br>───────────────<br><br>**PIVOT POINT PARTNERS, LLC**,<br><br>Appellant,<br><br>v.<br><br>**E. LYNN SCHOENMANN**, *et al.*,<br><br>Appellees. | Case No.: 15-cv-04126-YGR<br><br>**ORDER VACATING PRELIMINARY INJUNCTION; REMANDING TO BANKRUPTCY COURT** |

Appellant Pivot Point Partners, LLC, ("Pivot Point") brings this appeal challenging the bankruptcy court's grant of appellee E. Lynn Shoenmann's (the "Trustee") motion for a preliminary injunction against Pivot Point enjoining it from foreclosing on a deed of trust. After denying Pivot Point's motion for relief from the automatic stay in the underlying Chapter 7 action, the bankruptcy court entered the preliminary injunction enjoining Pivot Point from conducting a trustee's sale under the deed of trust pending trial in the underlying adversary proceeding brought by the Trustee. (Dkt. No. 3-19.) Pivot Point timely appealed the bankruptcy court's orders on (1) its motion for relief from the automatic stay and (2) the Trustee's motion for preliminary injunction. Pivot Point has since dismissed its appeal of the automatic stay; only the instant appeal of the bankruptcy court's grant of the Trustee's motion for preliminary injunction is before this Court.

Having carefully considered the papers submitted and the record in this case, the Court **VACATES** the order granting preliminary injunction and **REMANDS** to the bankruptcy court for further proceedings consistent with this Order.

## I. BACKGROUND

This appeal arises out of the involuntary Chapter 7 bankruptcy proceedings commenced in 2013 against WB Coyle, aka William Bernard Coyle, aka W.B. Coyle (the "Debtor"). On October 30, 2014, the Trustee instituted an adversary proceeding against Pivot Point seeking recovery of a purported fraudulent transfer of the commercial apartment building located at 2017-2021 Powell Street, San Francisco, California (the "Property"). Pivot Point maintains that it is merely the current holder of a promissory note and deed of trust on the Property and was not a party to any transactions related to the Property involving the Debtor within the meaning of the Bankruptcy Code.

The Court provides the following timeline related to the Property and loan as alleged by the Trustee in its operative complaint in the adversary proceeding:

- In or about April 2004, Darrel C. Horsted, Telegraph Hill Properties ("Telegraph"), and North Beach Partners, LLP ("NBP") purchased the Property. (Dkt. No. 7-3, "Adv. Compl." ¶ 13.) Telegraph is alleged to be an entity controlled by the Debtor. (*Id*.) Moreover, the Superior Court of California sitting in and for the County of San Francisco previously adjudged the Debtor to be the alter ego of Telegraph and NBP. (Dkt. No. 4-6 at 25–28.)

- In February 2012, Horsted sued the Debtor and his entities regarding the development and ownership of the Property. (Adv. Compl. ¶ 14.)

- In November 2012, Horsted and the Debtor (on behalf of himself, Telegraph, and NBP) executed a settlement agreement in which Horsted agreed to sell and assign his interest in the Property to Innocenti, LLC in exchange for a payment of $1,250,000.00. (*Id*. ¶ 17.) Through the settlement agreement, the Debtor also assigned his (and Telegraph's and NBP's) entire interest in the Property to Innocenti. (*Id*.) The Debtor was the sole and managing member of Innocenti. (*Id*.)

- In December 2012, Innocenti obtained a loan in the amount of $1,200,000 from Lone Oak Fund, LLC ("Lone Oak") to purchase Horsted's interest in the Property. (*Id*.) Although the Debtor completed the loan application, it was Innocenti that ultimately signed as the borrower on the loan. (*Id*.)

- On December 20, 2012, Horsted executed a grant deed transferring his interest in the Property to Innocenti. (*Id*. ¶ 19.)
- Following December 24, 2012, the Debtor fraudulently transferred his entire interest in Innocenti to his mother, Ms. Trifiletti. (*Id*. ¶ 23.)
- One year later, in December 2013, Lone Oak sold the note and deed of trust on the Property to Pivot Point for $1,400,000. (*Id*. ¶ 29.)
- On December 17, 2013, immediately after acquiring the note on the Property, Pivot Point issued a notice of trustee's sale for foreclosure on the Property under the deed of trust. (*Id*. ¶ 31.) Pivot Point has postponed the foreclosure several times. (*Id*. ¶ 32.)

The Trustee alleges that the Debtor orchestrated the sale of the loan and deed of trust from Lone Oak to Pivot Point by connecting the two entities. (*Id*. ¶ 29.) Fruchtman, one of Pivot Point's members, is the Debtor's ex-girlfriend and allegedly knew about the Debtor's financial and legal difficulties in 2013. (*Id*. ¶¶ 24–25.) The other active Pivot Point member, Larkin, is Fruchtman's sister. (*Id*. ¶ 24.) Fruchtman and Larkin were allegedly aware the Debtor fraudulently transferred Innocenti to his mother so the Debtor's creditors could not reach Innocenti's interest in the Property. (*Id*. ¶ 28.) Prior to the sale of the loan and deed of trust from Lone Oak, Pivot Point's managing member wrote: "I will need WB's advice on the foreclosure part and how to be a loan manager – ha – managing a loan he doesn't plan on paying to get us a building at a price we could never get on the open market." (*Id*. ¶ 29.) The Trustee alleges that no payments have been made by Innocenti, the Debtor, or the Debtor's mother on the note since Pivot Point purchased it in 2013. (*Id*. ¶ 26.)

Further, the Trustee alleges that Pivot Point has not completed its foreclosure sale on the Property to allow default interest to continue accruing. (*Id*. ¶ 34.) According the Trustee, Pivot Point's tactic allows the default interest to accumulate to the point where the Debtor's creditors would get no equity out of the Property. (*Id*.) In a December 9, 2013 email, Fruchtman said to her sister Larkin: "I don't understand the part about charging Innocenti interest. Is that just for optics so whoever comes to purchase it would have to satisfy that as well?" (*Id*.) Larkin responded in the affirmative: "[it makes] the building less appealing to other buyers." (*Id*.) In that regard, Pivot Point

is allowing default interest to accrue so that the Debtor's creditors have no incentive to recover the Property. (*Id.* ¶ 35.)

The claims in the Trustee's adversary proceeding focus on Pivot Point's purchase of the loan and deed of trust from Lone Oak in 2013. Specifically, the Trustee alleges that Pivot Point is the knowing, bad faith transferee of an intentionally fraudulent transfer. Based thereon, the Trustee seeks to unwind: (1) the transfer of the Debtor's interest in the Property to Innocenti in the settlement with Horsted; (2) the transfer of Innocenti from the Debtor to his mother Trifiletti; and (3) the transfer of the loan and deed of trust from Lone Oak to Pivot Point. (*See id.*) The Trustee also seeks to enjoin Pivot Point permanently from foreclosing on the Property.

Pivot Point maintains that the bankruptcy court cannot unwind its purchase of the loan and deed of trust from Lone Oak because they were not the property of the Debtor when purchased, but instead, of Lone Oak. Pivot Point emphasizes that the Trustee does not dispute that the loan transaction between Lone Oak and Innocenti in 2012 was valid and enforceable. Pivot Point thus takes the position that its payment in cash of the unpaid debt owed on the loan to Lone Oak, or $1.4 million, to purchase the loan and deed of trust in 2013 was similarly valid and enforceable. (Dkt. No. 7-5, ¶ 5.)

## II.   THE PRELIMINARY INJUNCTION

On June 25, 2015, the Trustee filed a motion for preliminary injunction seeking to prevent Pivot Point from proceeding with a foreclosure sale of the Property. (Dkt. No. 7-4.) The Trustee based her motion on her claim that she could stop the foreclosure by unwinding the transfer of the loan and deed of trust from Lone Oak to Pivot Point, *i.e.* the fraudulent transfer claim asserted against Pivot Point under 11 U.S.C. section 548(a)(1)(A). (*See* Dkt. No. 3-18, "Hearing Tr." at 27:5–11.) Under Section 548(a)(1)(A), the Trustee may avoid a transfer of, *inter alia*:

> an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . .

11 U.S.C. § 548(a)(1)(A).

4

The Trustee's theory is not dependent upon Pivot Point receiving property from the Debtor directly. Rather, Pivot Point may be liable if the Trustee shows Pivot Point (i) received property of the Debtor, or (ii) is an "immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). Said otherwise, the Trustee can recover from Pivot Point if the Trustee proves Pivot Point is the subsequent transferee of an initial fraudulent conveyance of the Debtor's property to Lone Oak under Section 548. *See id.* As a subsequent transferee, Pivot Point can assert a good faith defense if it shows that it took "for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided," or that it is the "immediate or mediate good faith transferee of such transferee." 11 U.S.C. § 550(b).

On August 20, 2015, the bankruptcy court, the Honorable Hannah L. Blumenstiel presiding, held a hearing on the Trustee's motion for preliminary injunction. At the outset of the argument, Judge Blumenstiel stated that she found several of the elements under Section 548(a)(1)(A) easily met, including that: the transfers were made within two years of the date of the petition, creditors existed at or after the time of the transaction in question, and the transfers were made with the actual intent to hinder, delay, or defraud by the Debtor. (Hearing Tr. at 8:13–9:7.) She further found that the Trustee was likely to prevail on a showing that two transactions were fraudulent and could be unwound: first, the transfer of the Debtor's interest in Innocenti to his mother; and, second, the transfer of the Debtor's[1] interest in the Property to Innocenti. However, with respect to whether there was a transfer of an interest of the Debtor when Pivot Point bought the loan and deed of trust, Judge Blumenstiel expressed some concern:

> [T]hat finally brings me to whether there was a transfer of the Debtor's interest in property in connection with the purchase of the Lone Oak loan by Pivot Point. The Trustee does not attack the Lone Oak loan itself, but I think that this transaction is vulnerable under this element of 548(a)(1) because the transfer of [the Debtor's][2] interest of the [Property] to Innocenti is vulnerable.

---

[1] As noted, *supra*, the transfer was from NBP to Innocenti. Because NBP has been adjudged an alter ego of the Debtor, the bankruptcy court construed this as a transfer of the Debtor. (Hearing Tr. at 9:19–10:2.)

[2] *See* note 1, *supra*.

5

1  (Hearing Tr. at 10:3–10.)

2  Following a brief recess in the proceedings, Judge Blumenstiel set forth her findings and
3  reasoning on the record:

> A plaintiff is entitled to a preliminary injunction where that plaintiff can show a number of factors, namely that there's a likelihood that he or she will prevail on the merits of the case, that there's irreparable harm that will occur if the injunctive relief is not afforded, that the balance of the equities and of the public interest weighs in favor of granting injunctive relief.  And that claim is – that particular claim is brought under Section 548(a)(1)(A) of the Bankruptcy Code.  In order to prevail on that claim, the Trustee must show that there was a transfer of an interest of the Debtor in property made within two years before the date of the filing of the petition with actual intent to hinder, delay, or defraud an entity to which the Debtor was or became on or after the date that such transfer was made indebted.
>
> As I said at the outset of the hearing, I find that some of those elements are pretty easily analyzed.  It doesn't appear to be seriously disputed, but the transfers in question occurred within two years of the petition date.  It also doesn't appear to be seriously disputed that there were creditors of the Debtor who existed at or after the time of the subject transfers.  So I find that the Trustee is likely to prevail on the merits of those two aspects of 548(a)(1).
>
> I also find [the Trustee] likely to prevail on the required element of intent.  All indications that I have with regard to [the Debtor's] intent with respect to these various transfers is that he was attempting to try to protect and hide assets from his creditors, and so I find the Trustee likely to prevail on that limited [sic] 548(a)(1).
>
> The most difficult element is – at least proposed in this motion is whether the Trustee is going to be able to show that there was a transfer of an interest of the Debtor in property.  Now with respect to two of the three transactions at issue, I find that the Trustee is likely to prevail, namely the transfer of [the Debtor's] membership interest in Innocenti to his mother.  That was clearly a transfer of his interest, so that's a pretty straightforward analysis.
>
> It's also not too difficult to find that element likely to be satisfied with respect to the alleged wrongful transfer of [NBP's] interest in the [Property] to Innocenti, principally for the reason that a State Court has adjudicated [NBP] to be the alter ego of [the Debtor].  Therefore, a transfer of [NBP's] interest becomes for all intents and purposes a transfer of [the Debtor's] interest.

6

It's a much more difficult challenge to find out the transfer of an interest of the Debtor in property owned or established or likely to be established with respect to the Pivot Point acquisition of the Lone Oak loan. The Defendants have argued – Pivot Point has argued that there was never an interest of the Debtor in this property because the Lone Oak loan was to take out a prior secured creditor, and so the beneficial interest under the deed of trust held by that prior secured creditor passed to Lone Oak and then passed to Pivot Point, so it was never in the bundle of sticks that Innocenti or anyone else ever held with respect to [the Property].

I don't accept that. In order for Lone Oak to have obtained an interest under the deed of trust, the prior secured creditor [*i.e.*, Horsted] had to release its interest. And so even if for a split second, there was interest of the Debtor, that interest of Innocenti was transferred to Lone Oak and then it passed to Pivot Point and because the transfer of [the Debtor's] interest – or [NBP's] interest to Innocenti in the [Property] is vulnerable, I find that there was interest of the Debtor in the property that is vulnerable here for purposes of the Pivot Point transaction that the Trustee attacks.

I also find that, you know, the Trustee is likely to prevail on the issue of good faith and without knowledge of the potential avoidability of the transfer under 550. There's ample evidence in the record so far that suggests that Pivot Point took – you know, acquired the Lone Oak loan with knowledge that [the Debtor] may have been, you know, trying to avoid his creditors and engaged in other conduct that would make his various maneuverings actionable. And the e-mails that we've discussed so much in these proceedings suggest that Pivot Point may have been complicit in some of these shenanigans.

Turning to the other elements that the Trustee needs to prove in order to be entitled to injunctive relief, the most difficult of the remaining elements is clearly the irreparable harm factor. Pivot Point cites to good case law that says in the commercial context, real property is not unique, such that irreparable harm should never be found in that context. But here, we have different – we have some additional facts that I think justify a finding of irreparable harm.

The defense sections of fraudulent transfers that were made with actual intent to hinder, delay or defraud creditors and where those facts are alleged it could very well be that defendants engaged in similar conduct such that would make any potential judgment uncollectible. So under those circumstances, I'm inclined to fin [sic] that irreparable harm exists that would justify entry of injunctive relief.

7

> The balance of the equities and public interest, you know, for reasons consistent with my analysis of the good faith aspects under the relief from stay motion that we discussed and the request for dismissal of the Innocenti bankruptcy case, I mean it would hardly be fair for me to find those two elements, public interest and balance of the equities weighed in favor of [Pivot Point] where they're accused of such wrongful conduct.  So there too, I'm also going to find in favor of the Trustee.

(Hearing Tr. at 26:22–31:12.)   Judge Blumenstiel then ended the hearing after directing the parties to submit a joint proposed order on the preliminary injunction.

### III.   JURISDICTION

On August 16, 2016, this Court raised *sua sponte* whether it had jurisdiction over an appeal from the bankruptcy court's order granting the preliminary injunction.  (*See* Dkt. No. 22.)  Following the parties' supplemental briefing on the issue, and for the reasons discussed below, the Court is convinced that subject matter jurisdiction is present.

A district court has jurisdiction to hear appeals from orders of the bankruptcy court which are "final."  28 U.S.C. § 158(a)(1).  It is well-settled in the Ninth Circuit that a bankruptcy court's ruling on an automatic stay is considered final within the meaning of the statute.  *See In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990).  With respect to preliminary injunctions, the Ninth Circuit has determined that they are typically "an extension of the automatic stay, halting another proceeding to avoid disruption of the debtor's reorganization."  *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1093 (9th Cir. 2007).  In that regard, the Ninth Circuit instructs that so-called "preliminary" injunctions should be construed as final for appealability purposes where "nothing in the record indicates that the bankruptcy court contemplated further proceedings on the injunction."[3]  *Id.*  (citing with approval *In re Ionosphere Clubs, Inc.*, 139 B.R. 772, 778 (S.D.N.Y. 1992) (preliminary injunctions are final if the bankruptcy court "contemplates no further hearings on the merits of the injunction, apart from the outcome of reorganization")).

---

[3] In light of the Ninth Circuit's standard to determine finality of a bankruptcy court order in the context of preliminary injunctions announced in *In re Excel*, the Court rejects the Trustee's invitation to rely on a general standard to determine whether a bankruptcy court order is final as announced more than fifteen years prior thereto.  *See In re Frontier Properties, Inc.*, 979 F.2d 1358, 1362–63 (9th Cir. 1992) (holding that a final decision is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.") (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

Here, there is no indication in the record that the bankruptcy court contemplated any further proceedings on the injunction. The bankruptcy court's order granting the Trustee's motion specified that the injunction would remain in effect "pending trial of this action . . . ." (Dkt. No. 3-19 at 2.) Moreover, the bankruptcy court has not provided any additional opportunity for the parties to address the issue since that order issued. As such, the Court's jurisdiction is sound.

### IV.   STANDARD OF REVIEW

The Court reviews the bankruptcy court's grant of a preliminary injunction for an abuse of discretion. *In re Morgan-Busby*, 272 B.R. 257, 260 (9th Cir. BAP 2002); *In re First Alliance Mortg. Co.*, 264 B.R. 634, 644 (C.D.Cal. 2001). "A bankruptcy court abuses its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous interpretation of the facts." *In re Morgan-Busby*, 272 B.R. at 260–61 (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

### V.   ANALYSIS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To show entitlement to a preliminary injunction, a plaintiff must establish that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities tips in its favor; and (4) the injunction is in the public interest. *Id.* at 20; *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1054 (9th Cir. 2009). The plaintiff must make a threshold showing of likelihood of success on the merits and irreparable harm, but a stronger showing on one element may offset a weaker showing on another. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–33 (9th Cir. 2011). In that regard, the four factors may be evaluated on a sliding scale: "serious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotations omitted).

Here, Pivot Point argues that the bankruptcy court abused its discretion in concluding that the Trustee had shown the first two factors: (A) likelihood of success on the merits and (B) likelihood of irreparable harm. Pivot Point contends that the bankruptcy court's determination on these two

factors was based on both erroneous views of the law and clearly erroneous interpretations of fact. Pivot Point requests the Court vacate the bankruptcy court's entry of the preliminary injunction. The Court now addresses whether the bankruptcy court abused its discretion on these two factors:

### A. Likelihood of Success on the Merits

"The first factor under *Winter* is the most important – likely success on the merits." *Garcia v. Google*, 786 F.3d 733, 740 (9th Cir. 2015). To prevail, the moving party bears the burden of showing it will likely succeed on the merits of its claims in the action. *Id*. Pivot Point argues that the bankruptcy court abused its discretion by finding that the Trustee is likely to succeed on the merits of its fraudulent transfer claim. More particularly, Pivot Point argues the bankruptcy court erred in concluding that Pivot Point was the mediate transferee of a prior fraudulent transfer involving property of the Debtor for the original Lone Oak transaction. The Court agrees.

The bankruptcy court relied on a "split second" theory to find that the original Lone Oak loan involved a transfer of an interest belonging to the Debtor:

> [E]ven if for a split second, there was interest of the Debtor, that interest of Innocenti was transferred to Lone Oak and then it passed to Pivot Point and because the transfer of [the Debtor's] interest – or [NBP's] interest to Innocenti in the [Property] is vulnerable, I find that there was interest of the Debtor in the property that is vulnerable here for purposes of the Pivot Point transaction that the Trustee attacks.

(Hearing Tr. at 29:17–24.) Said otherwise, the bankruptcy court determined that the Debtor (through his alter ego Innocenti) transferred a portion of his interest in the Property when the Lone Oak loan was executed and a deed of trust on the Property was granted to Lone Oak.

The Court agrees with Pivot Point that the bankruptcy court's "split second" theory is contrary to California law. California follows the lien theory of mortgages under which a lender (*i.e.* a mortgagee) "does not get title, but simply obtains a lien," on the Property. *Bank of Italy Nat'l Trust and Savings Ass'n v. Bentley*, 217 Cal. 644, 654 (1933). Moreover, in California, "deeds of trust, except for the passage of title for the purpose of the trust, are practically and substantially only mortgages with a power of sale." *Monterey S.P. Partnership v. W.L. Bangham, Inc.*, 49 Cal.3d 454, 460 (1989) (quoting *Bank of Italy*, 217 Cal. at 657). Thus "[i]n practical effect, if not in legal parlance, a deed of trust is a lien on the property." *Id*. "The deed of trust conveys 'title' to the

trustee only so far as may be necessary to the execution of the trust." *Id*. (internal quotations omitted).

The Trustee has not cited, and the Court has not located, any law supporting the bankruptcy court's theory that the Lone Oak loan constituted a transfer of the Debtor's property as required for the Trustee to succeed on the merits of its fraudulent transfer claim. *See* 11 U.S.C. § 548(a)(1)(A). Lone Oak acquired a lien on the Property and not actual property from the Debtor. The bankruptcy court's grant of the preliminary injunction was therefore an abuse of discretion insofar as the Trustee's likely success on the merits relied upon the "split second" theory.[4]

### B. Likelihood of Irreparable Harm

A plaintiff may obtain a preliminary injunction only if it is shown that irreparable harm is likely to result in the absence of the injunction. *Wild Rockies*, 632 F.3d at 1135 (citing *Winter*, 555 U.S. at 20). Irreparable harm for purposes of injunctive relief "is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, (9th Cir. 2014); *see also Rent-A-Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 2011). Harm compensable through money cannot provide the irreparable harm required for the extraordinary equitable remedy of a preliminary injunction. *Goldie's Bookstore, Inc. v. Superior Ct.*, 739 F.2d 466, 471 (9th Cir. 1984) ("Mere financial injury . . . will not constitute irreparable harm if adequate compensatory relief will be available in the course of litigation."). Further, "[s]peculative injury cannot be the basis for a finding of irreparable harm." *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007).

The Trustee argued to the bankruptcy court that it will suffer irreparable harm should Pivot Point be allowed to proceed with a foreclosure sale of the Property. The Trustee made two general arguments why it had no adequate legal remedy, namely because: (1) real property is unique and

---

[4] Pivot Point further argues that the split second theory was purely speculative as the bankruptcy court did not rely on any admissible evidence regarding: (i) the terms of the prior deeds of trust paid off by the Lone Oak loan in 2012, (ii) the timing of the pay-off of loans previously encumbering the Property, and (iii) whether an escrow was used in connection with the 2012 loan transaction such that the conveyances would have been simultaneous. In that regard, Pivot Point argues that the split second theory was not supported by the record. Because the Court otherwise finds the split second theory not supported in the law, it need not reach these factual arguments.

11

money damages could not compensate it adequately following a sale; and (2) a money judgment against Pivot Point may be uncollectable after it forecloses on the Property. The bankruptcy court rejected the Trustee's first argument, relying on "good case law that says in the commercial context, real property is not unique, such that irreparable harm should never be found in that context." (Hearing Tr. at 30:15–17.) Instead, the bankruptcy court found irreparable harm based "additional facts" going to the Trustee's second argument: collectability. The bankruptcy court found that, where there are allegations of "actual intent to hinder, delay or defraud creditors . . . it could very well be that defendants engaged in similar conduct such that would make any potential judgment uncollectible." (*Id*. at 30:20–25.)

With respect to the uniqueness of real property, the Court finds no error in the bankruptcy court's conclusion that the Property is not so unique such that irreparable harm will result if it is sold. Where the harm absent an injunction is loss of an interest in a commercial property, such loss is "easily calculable and compensable in damages" upon conclusion of the litigation. *Goldie's*, 739 F.2d at 471. The Court therefore declines the Trustee's invitation to uphold the bankruptcy court order based on the Trustee's assertion that it established irreparable harm due to the unique status of the Property.[5] The bankruptcy court correctly rejected the Trustee's proposition that loss of real property is irreparable as a matter of law.

As to the issue of collectability, the record is limited. The Trustee's briefing before the bankruptcy court (and here) relied exclusively on a Second Circuit case for the proposition that "[a] preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible." (Dkt. No. 3-17 at 3:11–13) (quoting *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 87 (2d Cir. 1996)). Notably, the Trustee did not submit or cite to any evidence that Pivot Point intended to make a judgment uncollectible beyond the summary statement that Pivot Point "appears to be a single purpose entity, whose members have demonstrated history [sic] of participating in

---

[5] The Trustee's reliance on Cal. Civ. Code section 3387 to establish irreparable harm as a matter of law is misplaced. That section applies only to claims for specific performance arising out of a breach of contract, providing: "It is to be presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation." Cal. Civ. Code § 3387.

12

1 fraudulent transfers . . . ." (*Id*. at 3:9–11.) The bankruptcy court's reasoning on the record is
2 similarly speculative, concluding that, looking to the allegations of fraud against Pivot Point, "it
3 could very well be that defendants engaged in similar conduct such that would make any potential
4 judgment uncollectible." (Hearing Tr. at 30:22–25.) A finding of irreparable harm based on
5 speculative injury resulting from conjecture is insufficient. This factual finding was an abuse of
6 discretion.

7 In addition, the bankruptcy court's finding of irreparable harm relied on an erroneous view of
8 the law. The "uncollectible" standard came from non-binding Second Circuit authority. *See*
9 *Pashaian*, 88 F.3d at 87. Relevant here, the Ninth Circuit has held that trial courts have the
10 "authority to issue a preliminary injunction where the plaintiffs can establish that money damages
11 will be an inadequate remedy due to impending insolvency of the defendant or that defendant has
12 engaged in a pattern of secreting or dissipating assets to avoid judgment." *In re Estate of Ferdinand*
13 *Marcos, Human Rights Litig*., 25 F.3d 1467, 1480 (9th Cir. 1994). In that case, the Ninth Circuit
14 affirmed the district court's entry of a preliminary injunction where it found "there was substantial
15 danger that the defendants would transfer or conceal its funds, resulting in denying recovery to the
16 plaintiffs." *Id*. The district court made five specific factual findings in support of its conclusion,
17 including that: (i) prior creditors had been unable to execute upon defendants' assets to collect their
18 judgment, and (ii) "federal courts have twice enjoined [the defendants] from transferring or secreting
19 assets, based on a pattern and practice of secreting assets through foreign bank accounts by the use of
20 aliases and shell corporations." *Id*. The Ninth Circuit concluded that the district court did not abuse
21 its discretion in granting the injunction based on those factual findings, especially because they were
22 not disputed by defendants on appeal. *Id*. Here, no such factual findings were made by the
23 bankruptcy court when it determined a money judgment may be "uncollectible."

24 Accordingly, the bankruptcy court abused its discretion in making a finding of a likelihood of
25 irreparable harm. The factual finding that a money judgment may not be collectible was not
26 supported by the record nor was it based on the applicable Ninth Circuit standard.
27 ///
28 ///

13

### VI. CONCLUSION

Based upon the foregoing, the Court concludes that the bankruptcy court committed an abuse of discretion in granting the Trustee's motion for preliminary injunction. The Court **VACATES** the preliminary injunction and **REMANDS** for further proceedings consistent with this Order.

In so ruling the Court does not ignore the evidence showing Pivot Point likely engaged in troubling activities which, at a minimum, reflect its alliance with and complicity in the Debtor's history of fraudulently avoiding his creditors. This Order does not condone those activities nor does it reflect a view on the merits of the Trustee's claims against Pivot Point. Instead, this Order is limited to review of the preliminary injunction and the grounds upon which the bankruptcy court issued the injunction. The Court concludes only that it was an abuse of discretion to grant the preliminary injunction for the legal and factual reasons set forth by the bankruptcy court.

This Order terminates this action.

**IT IS SO ORDERED.**

Dated: October 3, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**